for two taxes when one has, in fact, been paid invalidates the sale.

For aught I see the plaintiff is entitled to judgment in substance declaring the claim of defendant invalid.

Judgment for plaintiff.

---

THE AMERICAN STEEL HOUSE COMPANY, Plaintiff, *v.* WILLIAM R. WILLCOX, President of the Department of Parks of the City of New York, RICHARD YOUNG and JOHN E. EUSTIS, Constituting the Department of Parks of the City of New York and THE PARK CARRIAGE COMPANY, Defendants.

(Supreme Court, New York Special Term, August, 1902.)

New York city — Nature of a stage route confined to the public parks — L. 1897, ch. 378, §§ 73, 74, 1458, 1461.

> The department of parks of the city of New York may grant a privilege for a public stage route, stations and waiting rooms in Central Park and Riverside Drive, designed merely to enable visitors to the parks to pass from one portion of them to another, or in or out of them, as such a privilege is a mere license and is neither a franchise nor a stage or omnibus route within the meaning of the charter.

MOTION to continue an injunction *pendente lite*.

C. L. Beare, for motion.

George L. Rives, Corporation Counsel (Terence Farley, of counsel), and Page & Conant (W. H. Page and R. O. Catlin, of counsel), for defendant Park Carriage Company, opposed.

GIEGERICH, J.   This is an application for an injunction *pendente lite,* in an action brought by a taxpayer to restrain such of the defendants as constitute the park board of the department of parks from granting any privileges for a public stage route, stations and waiting-rooms upon the public property in Central Park and Riverside Drive in pursuance of certain agreements made by such defendants' predecessors in office, and to restrain

the defendant, The Park Carriage Company, from exercising such privileges. Many questions are raised and discussed in the briefs submitted, but most of them need not be considered because of the conclusion I reach that the predecessors of the defendants now constituting the department of parks had the power to grant the privileges they assumed to grant in the contracts referred to. The plaintiff's case is based upon the theory that the concession in question is a franchise, or at least a stage route; while on behalf of the defendants it is claimed that it is only a privilege or license that was granted, and neither a franchise nor a stage route within the meaning of the charter. If it be held to be a franchise, then clearly the requirements of sections 73 and 74 of the Greater New York Charter (L. 1897, ch. 378), relative to the manner of granting franchises, were not complied with. I do not think, however, that the grant here in question is one contemplated by those sections, which were designed to protect the interests of the city in the disposal of the very valuable rights to the use of the streets, and which prescribe the manner in which the municipal assembly, now board of aldermen, shall exercise its power in granting such rights. The use of the parks, however, is a quite different matter and is provided for in a quite different way. The control of the streets was and is vested in the municipal assembly or board of aldermen, but that of the parks is plainly and exclusively vested in the park board, a body created expressly for that purpose. Greater New York Charter, chap. 11, tit. 1. This distinctness of function is so carefully preserved that the jurisdiction of the park board has been extended (L. 1887, ch. 179) so as to embrace, and is made exclusive over, certain streets which form connecting links of the park system, such as portions of West Seventy-second street and One Hundred and Twenty-second street. Neither do I think that the privilege in question should be deemed a stage or omnibus route within the meaning of sections 1458 to 1461 of the Greater New York Charter. The rights there contemplated are quite different and much broader than the running of stages within the limits of the parks and for the purpose of conveying visitors from one portion to another of the parks. Of course, if the park commissioners should ever attempt to license the operation of stages in such a way that transportation within the park limits was

made or became a link in a general transportation system, such as is contemplated in sections 73 and 74 and in sections 1457–1461 of the Greater New York Charter, they would clearly transgress their power, and their action would be void. Neither is it necessary to go so far as to say that the board of aldermen, in granting a franchise or an authority to run stages, could not include within such grant any necessary portions of the parks; indeed, the word " parkways " is employed in section 73 indicating that such a power does exist. The point of distinction in my mind is whether the right to run stages is confined to their operation for the sole purpose of carrying visitors into or out of the park or from one portion thereof to another, or whether it is a part of a larger scheme of general transportation of passengers not employing the stages for the sole purpose of visiting the parks. No claim is made in this case that the stages in question are used or can be used other than by park visitors for the purposes of their visit. Such being the case, the licensing of these stages is a matter that should be left to the discretion of the park commissioners, like other matters pertaining to the control and maintenance of the parks, and the convenience and comfort and enjoyment of the public while visiting them. The license here in question is analogous, not to franchises and stage routes, but to the use, commonly seen in public parks, of goat carriages, ponies and the like, for the conveyance of juvenile passengers.

Motion denied, with ten dollars costs.